NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ORBIN COVACHUELA, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

JERSEY FIRESTOP, LLC, *et al.*,

Defendants.

Civil Action No. 20-8806 (ZNQ) (TJB)

**OPINION**

QURAISHI, District Judge

THIS MATTER comes before the Court upon a Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 filed by lead Plaintiff Orbin Covachuela ("Plaintiff") ("the Motion," ECF No. 93). Plaintiff filed a brief in support of his Motion. ("Moving Br.," ECF No. 93-13.) Defendants Jersey Firestop LLC, Daniel Hinojosa, and David Hinojosa (collectively "Defendants") submitted a Brief in Opposition, ("Opp'n Br.," ECF No. 100), to which Plaintiff replied ("Reply Br.," ECF No. 103.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will DENY Plaintiff's Motion.

---

[1] All references to Rules hereinafter refer to the Federal Rules of Civil Procedure unless otherwise noted.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

A.      **RELEVANT PROCEDURAL HISTORY**

Plaintiff brings this putative class action lawsuit on behalf of himself and others similarly situated, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New Jersey Wage and Hour Law, N.J. Stat. Ann. §§ 34:11-56a to -56a41 ("NJWHL"), the New Jersey Wage Payment Law, N.J. Stat. Ann. §§ 34:11-4.1 to -4.15 ("NJWPL"), and the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. §§ 34:19-1, *et seq.* ("CEPA"). (Am. Compl. ¶ 1, ECF No. 21.)  The Court has federal question jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

Plaintiff filed his initial Complaint on July 13, 2020 (ECF No. 1) to which Defendants answered (ECF No. 7).  Plaintiff then filed an Amended Complaint on February 19, 2021.  (ECF No. 22.)  On April 9, 2021, the Honorable Anne E. Thompson, entered an opinion and order granting Plaintiff's Motion for Conditional Class Certification (ECF No. 12) and approved Plaintiff's conditions for notice and dissemination under the FLSA.  (ECF No. 27.)  Thereafter, six individuals submitted opt-in forms to become plaintiffs in the FLSA case.  (ECF Nos. 31–36.)  Since opting into this matter, four out of those six plaintiffs have failed to fulfill their discovery obligations, including their failure to appear and sit for a deposition.  (ECF No. 77.)  After multiple status and settlement conferences before the Magistrate Judge, the Court concluded that continued settlement discussions were not fruitful.  (ECF No. 90.)  The Court then ordered the parties to proceed with a Motion for Class Certification under Rule 23.  (ECF No. 90.)  The instant Motion, along with relevant attachments, was filed on April 12, 2024.  (ECF No. 93.)[2]

---

[2] Importantly, the FLSA collective action has no bearing on the instant Motion for class certification under Rule 23. As stated by Plaintiff in his Moving Brief, the FLSA violations are "not relevant to Plaintiff's motion to certify a Rule

B.    **FACTUAL BACKGROUND**

The following facts are derived from Plaintiff's Amended Complaint.  Plaintiff Orbin Covachuela was employed as a laborer by Defendant Jersey Firestop LLC ("Jersey Firestop" or "the Company") from April 2018 to October 2019.  (Am. Compl. ¶¶ 6, 36.)  Jersey Firestop is a New Jersey-based mechanical insulation and firestop contractor that provides firestop and insulation products and installs those products in various homes and businesses throughout the tri-state area.  (*Id.* ¶¶ 7–9.)  The individual defendants, Daniel and David Hinojosa, are officers, shareholders, and directors of Jersey Firestop and were Plaintiff's direct supervisors.  (*Id.* ¶ 11–12.)

As a laborer, Plaintiff was responsible for installing fire stopping material and performing dry wall carpentry at various worksites across New Jersey, Pennsylvania, New York, and Connecticut.  (*Id.* ¶ 38.)  For most of his employment, Plaintiff's responsibilities were as follows: at the beginning of the workday, Plaintiff was required to arrive at the Jersey Firestop office, check in with David and/or Daniel Hinojosa, load the company vehicle with equipment, and ride in one of the company vehicles to his scheduled worksite where he would perform carpentry and installation services.  (*Id.* ¶ 39.)  At the end of the workday, Plaintiff was required to ride back in the company vehicle to the office, where he would unload the equipment and then go home for the day.  (*Id.*)  Pre- and post-shift work amounted to over three hours of preparation and travel time each day, or over eighteen hours per week.  (*Id.*)  In addition to Plaintiff's time preparing and unloading the vehicle and traveling to worksites, Plaintiff worked numerous hours at the worksites.

---

23 Class" because the "FLSA is governed by an opt-in collective action process which has already been preliminary certified" by Judge Thompson.  (Moving Br. at 8.)  This Rule 23 Motion only pertains to Plaintiff's state law claims which are based on violations of the NJWPL and the NJWHL.  The Court therefore will not discuss the FLSA action in this Opinion.

(*Id.* ¶¶ 40–43.)  In total, Plaintiff worked between fifty-five hours per week, or sixty-six hours if he worked weekends.  (*Id.* ¶¶ 44–45.)

In addition to Plaintiff's job as a laborer, Plaintiff worked as a company driver during his time with Jersey Firestop.  (*Id.* ¶¶ 40.)  As explained in Judge Thompson's Opinion, Plaintiff's job as a Driver entailed "loading and unloading the company vehicle with all necessary equipment, and driving one of the company vehicles to and from the Worksites."  (ECF No. 12)  Plaintiff was paid his hourly rate for up to forty hours of work at the Worksites but he was not paid for preparation hours, i.e., time spent traveling to the office, loading the company vehicle, and driving the company vehicle.  (Am. Comp. ¶¶ 46–49.)

In October 2019, Plaintiff raised his concerns about not being adequately paid with Defendants and requested compensation for his pre- and post-shift work.  (*Id.* ¶¶ 50, 51.) Defendants refused to pay Plaintiff beyond his time at the scheduled worksites, and terminated Plaintiff's employment two weeks later.  (*Id.* ¶ 54.)  Plaintiff alleges that himself and the putative class members consisting of over 100 laborers were not paid for similar pre- and post-shift work, i.e., collecting the company vehicle and loading equipment at the beginning of the day and returning the company vehicle and equipment at the end of the day.  (*Id.* ¶ 58; Moving Br. at 2, 4–5.)  Plaintiff additionally alleges that Defendants did not pay its employees overtime for all hours worked in excess of forty hours per week.  (Am. Compl. ¶ 59.)  Instead, Defendants compensated Plaintiff for no more than eight hours in overtime for work completed on Saturdays and failed to pay an overtime rate for any additional overtime hours.  (*Id.* ¶¶ 59–60.)  Plaintiff further alleges that Defendants had a policy requiring laborers to work prior to their normal 7:00 a.m. start time at their assigned worksites but never paid their employees for that pre-shift work.  (Moving Br. at 6.)

Based on the above facts, Plaintiff brought three causes of action against Defendants. First, as briefly mentioned earlier, is an FLSA collective action involving himself and similarly situated persons ("Collective Plaintiffs") "who were employed since the date three . . . years prior to the filing of th[e] Complaint and who elect to opt-in." (Am. Compl. ¶ 19.)[3] Plaintiff contends that under provisions of the FLSA, Plaintiff and the Collective Plaintiffs were entitled to overtime compensation. (*Id.* ¶ 63.) The Collective Plaintiffs in the FLSA action include "no less than twelve . . . similarly situated current and former drivers and/or laborers employed by Defendants." (*Id.* ¶ 20.) As alleged, these Collective Plaintiffs were not paid overtime rates for all hours worked in excess of forty hours per week, and Defendants engaged in an unlawful pattern of minimizing labor costs and denying employees compensation. (*Id.* ¶¶ 21–24.)

The second and third causes of action are brought by Plaintiff on behalf of himself and similarly situated persons who were employed by Defendants since the date six years prior to the filing of the Complaint. (*Id.* ¶ 25.) They are: (1) a NJWHL action for overtime violations, and (2) a NJWPL action for failure to timely pay wages. Given that the parties are unable to resolve the underlying dispute, the Court now considers whether certification of Plaintiff's proposed class for the above-mentioned causes of action is appropriate.

---

[3] An FLSA collective action is a "form of group litigation in which a named employee plaintiff or plaintiffs file a complaint [o]n behalf of a group of other, initially unnamed employees who purport to be 'similarly situated' to the named plaintiff. Thus, via § 216(b), the FLSA provides a vehicle for managing claims of multiple employees against a single employer." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016); 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:16 (12th ed. 2015) ("The purpose of a collective action under the FLSA is to allow plaintiffs to minimize individual expense in pursuing wage rights through pooled resources and to benefit the judicial system through unitary resolution of common legal and factual issues arising from the same conduct."). Under the FLSA, to decide whether a group of plaintiffs will proceed as a collective action, the Court must determine whether the proposed plaintiffs are similarly situated. *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 535 (3d Cir. 2012).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 23 governs class actions.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).  "[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."  *Id.* (citing Fed. R. Civ. P. 23(a)-(b)).  Plaintiff first bears the burden of showing by a preponderance of the evidence that the proposed class satisfies the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  These four prongs are often referred to as numerosity, commonality, typicality, and adequacy.  *See, e.g.*, *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 165 (3d Cir. 2013).

A representative plaintiff must also show that the proposed class satisfies Rule 23(b)(1), (b)(2), or (b)(3).  *Marcus*, 687 F.3d at 590.  Here, Plaintiff argues that the putative class meets the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), a plaintiff must show the following:

> [Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Pursuant to Rule 23(c)(1)(A), a court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The decision to certify a class is left to the discretion of the court. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009). "[T]he requirements set out in Rule 23 are not mere pleading rules." *Marcus*, 687 F.3d at 591 (alteration in original) (quoting *Hydrogen Peroxide*, 552 F.3d at 316). "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Hydrogen Peroxide*, 552 F.3d at 318.

Moreover, "[a]ctual, not presumed[,] conformance with Rule 23 requirements is essential." *Marcus*, 687 F.3d at 591 (second alteration in original) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001)). "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). This "rigorous analysis" requires a district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 307, 316). Therefore, a district court "may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Hydrogen Peroxide*, 552 F.3d at 320 (quoting *Newton*, 259 F.3d at 167).

## III.  Parties' Arguments

### A.  PLAINTIFF

Plaintiff argues that the Court should certify a class pursuant to Rule 23 consisting of all individuals who were non-exempt laborers for Defendants at any time since July 13, 2014, until

June 28, 2021.  (Moving Br. at 2.)  Plaintiff relies on *Garcia v. Freedom Mortgage Corp.*, Civ. No. 09-2668, 2009 WL 3754070, at *2 (D.N.J. Nov. 2, 2009), to argue that "[c]ourts routinely certify off-the-clock claims under Rule 23 where [a defendant's] compensation policies . . . are facially unlawful."  (*Id.* at 9.)[4]  Regarding the Rule 23 factors and starting with numerosity, Plaintiff contends that the class is numerous because the Defendants employed approximately 140 laborers during the Class Period, who are all easily ascertainable.  (*Id.* at 10.)  Plaintiff next contends that commonality is satisfied because all members of the putative class suffered the same injuries due to Defendants' policy of mandating that employees work prior to arriving at their scheduled worksite, but not pay them for that work.  (*Id.* at 11.)[5]  Regarding typicality, Plaintiff argues that his claims are typical of the class because there is a "common pattern of wrongdoing" and Plaintiff will present the same evidence to support both his claims and the claims of the class members. (*Id.* at 18.)  With respect to adequacy, Plaintiff's counsel contends that he is experienced to litigate this case, and "there is nothing to suggest that the representative Plaintiff has any interest antagonistic to the vigorous pursuit of the Class claims against Defendants."  (*Id.* at 20.)  Lastly, Plaintiff argues that a class action is superior to other available methods of adjudication because in the "context of wage and hour litigation," "individual class members [might] lack the financial resources to vigorously prosecute a lawsuit against Defendants."  (Am. Compl. ¶ 30.)  In sum, Plaintiff contends that the "common issues of liability predominate," and "[w]hether Defendants

---

[4] *Garcia* is factually and procedurally distinct from the present matter.  *Garcia* involved whether a court should certify a collective action under the FLSA and whether to approve a notice to be sent to prospective members of the collective action.  *Garcia*, Civ. No. 09-2668, 2009 WL 3754070, at *1.  *Garcia* does not discuss Rule 23 or class certification. Although Plaintiff's FLSA collective action was conditionally granted, the present matter before the Court involves class certification under Rule 23, not the FLSA.

[5] Plaintiff notes that there are "three common questions that will produce common answers": (1) whether time once laborers arrived at the shop before the worksite and before leaving the shop after the worksite, including travel time between the shop and worksites, was compensable within the meaning of New Jersey's labor laws; (2) whether Defendants had actual or constructive knowledge that Class Members performed this uncompensated time; and (3) whether as a result of these practices, Defendants failed to pay all wages, including straight time and overtime wages, due and owing under New Jersey's labor laws.  (*Id.* at 13.)  The answers to these questions, according to Plaintiff, can be resolved with common evidence.  (*Id.*)

violated New Jersey's wage and hour laws . . . is the primary issue for resolution." (Moving Br. at 23.)

### B.     DEFENDANTS

Defendants argue that class certification is inappropriate because (1) Plaintiff "cannot meet his burden to establish commonality under Rule 23(a)(2), or predominance under Rule 23(b)(3)," and (2) Plaintiff cannot show that a class action is superior to other methods of adjudication." (Opp'n Br. at 1–2.)  Defendants contend that commonality is not satisfied because "the vast majority of putative class members undisputedly did not participate in the activity at the center of this case," i.e., driving to the office, loading the company vehicle, and then driving to the worksites. (*Id.* at 15.)  Defendants rely on *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115 (3d Cir. 2018), where the United States Court of Appeals for the Third Circuit vacated a District Court's order granting certification because there was no commonality or predominance, (*id.* at 18–19), and *Ferreras v. American Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019), where the Third Circuit held that the plaintiffs failed to meet their burden to establish commonality and predominance because they could not prove that each individual worked overtime.  (*Id.* at 21.)  Regarding superiority, Defendants contend that only seven individuals opted into the litigation after Judge Thompson granted Plaintiff's Motion for Conditional Certification with respect to the FLSA, of which four have not conducted discovery or prosecuted their case, leaving only three plaintiffs.[6]  (*Id.* at 26.) Lastly, Defendants contend that the proposed class does not satisfy Rule 23(c)(1)(B) because it is "impermissibly overbroad" and "woefully imprecise." (*Id.* at 28–29.)

---

[6] The Court notes that Defendants' arguments about opt-in rates and the failure of the opt-in plaintiffs to conduct discovery is irrelevant for purposes of numerosity under Rule 23.

## IV.    DISCUSSION

### A.    RULE 23(A) REQUIREMENTS

As explained above, Rule 23(a) sets forth four prerequisites for class certification that the plaintiff must prove by a preponderance of the evidence: (1) the class must be so numerous that joinder of all members is impractical (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims of the representative parties must be typical of the claims of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

#### 1.    Numerosity

There is no minimum number of members needed for a suit to proceed as a class action. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).  Generally, however, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Id.*  Nonetheless, Rule 23(a)(1) "requires examination of the specific facts of each case."  *Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 330 (1980).

"Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members."  *Marcus*, 687 F.3d at 596–97.  In the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence related "to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding.  Only then may the court rely on common sense to forgo precise calculations and exact numbers."  *Id.*; *see In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 468, 510 (D.N.J. 1997), *aff'd* 148 F.3d 283 (3d Cir. 1998) (finding the numerosity requirement of Rule 23 satisfied without pinpointing an exact number because the evidence suggested a class of over 8,000,000 policyholders and "[c]ommon sense suggest[ed] that it would be at best extremely inconvenient to join all class members"); *Cf. Lloyd v. City of Phila.*, 121 F.R.D. 246, 249 (E.D.

Pa. Aug. 22, 1988) (refusing to certify a class when, despite plaintiff's "mere speculation" that the class could exceed 10,000 employees, the evidence demonstrated that only four plaintiffs met the class definition).

Plaintiff argues that the class is numerous because the Defendants employed approximately 140 laborers during the Class Period, who are all easily ascertainable. (Moving Br. at 10.) Defendant does not challenge numerosity. Here, the Court finds that Plaintiff has demonstrated by a preponderance of the evidence that Defendants employed approximately 140 laborers during the Class Period. It is alleged that many of these laborers engaged in the same type of conduct as the representative Plaintiff. That fact is more than mere speculation. Therefore, the Court is satisfied that Plaintiff has satisfied Rule 23(a)'s numerosity requirement.

### 2. Commonality

Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s commonality requirement "does not require identical claims or facts among class member[s]." *Chiang v. Veneman,* 385 F.3d 256, 265 (3d Cir. 2004), *abrog. on other grounds by Hydrogen Peroxide*, 552 F.3d at 318 n.18. (alteration in original). "For purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quotation marks and alterations omitted); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

Where, as here, a party is seeking class certification under 23(b)(3), "the commonality requirement 'is subsumed by the predominance requirement.'" *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996)). The Court will thus address commonality with predominance later in this Opinion.

3.    Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  In addressing whether named plaintiffs satisfy this requirement, a court must address

> three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough*, 589 F.3d at 599.  The typicality "criterion acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'"  *Newton*, 259 F.3d at 183 (quoting *Georgine*, 83 F.3d at 631).

Plaintiff argues that his claims are typical of the class because there is a "common pattern of wrongdoing" and Plaintiff will present the same evidence to support both his claims and the claims of the class members.  (Moving Br. at 18.)  Defendant does not challenge typicality.  Here, the Court finds that Plaintiff has proven typicality.  The legal theories based on the NJWPL and NJWHL do not conflict with those of the putative class.  Rather, they are the same legal theories based on the same alleged violation by Defendants.  Specifically, Plaintiff has alleged a common pattern of wrongdoing, and will present similar facts to support both his claims and the claims of the class.  Those facts, according to Plaintiff, will allegedly show that Defendants had a practice or policy of requiring its employees to come the office and load the company vehicles without paying the plaintiffs, resulting in harm to the representative plaintiff and other class members.  (*See* Am. Compl. ¶¶ 28, 41.)  The Court agrees with Plaintiff's framing of the issue that "[t]he essence of each putative Class Member's claim is precisely the same and is based on Defendants' common

policy of not paying laborers for compensable time outside of the time spent at a Worksite." (Moving Br. at 19.)

Although there may be slight factual differences between each class member given that they may have worked different hours or did not participate in the activity at issue, these concerns are relevant for commonality and predominance, not typicality. *See In re Schering Plough*, 589 F.3d at 599 (setting forth the concerns for typicality which focuses on the putative plaintiffs' overall legal theories); *see also Carrow v. FedEx Ground Package Sys., Inc.*, Civ. No. 16-3026, 2019 WL 7184548, at *8 (D.N.J. Dec. 26, 2019) ("While . . . factual differences [may] exist, 'factual differences between the proposed representative and other members of the class do not render the representative atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members.'" (quoting *In re Schering Plough*, 589 F.3d at 598)). In sum, the claims of the representative plaintiff and the class members are based on the NJWPL and NJWHL, and present the exact legal issues, elements, and there are common defenses. Therefore, the Court is convinced that Plaintiff has proven typicality by a preponderance of the evidence.

4. <u>Adequacy</u>

Adequacy is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ P. 23(a)(4). For this inquiry, a court must consider whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously," and whether there is a "conflict between the individual's claims and those asserted on behalf of the class." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)). "This inquiry is vital, as 'class members with divergent or conflicting interests [from the named plaintiff and class counsel] cannot be adequately represented.'" *Id.* (quoting *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 395 (3d Cir. 2004)).

Here, the Court finds that the representative Plaintiff has the ability and incentive to represent the putative class, and the record does not disclose any conflicts between Plaintiff and the putative class members. Plaintiff's counsel contends that he is experienced to litigate this case, and the Court agrees with Plaintiff that "there is nothing to suggest that the representative Plaintiff has any interest antagonistic to the vigorous pursuit of the Class claims against Defendants." (Moving Br. at 20.) Defendants do not dispute that class counsel is adequate to represent the interests of the class. The Court further agrees that counsel is experienced to litigate this matter and will adequately represent the class.

### B.     RULE 23(B)(3) REQUIREMENTS

As discussed, in addition to the Rule 23(a) requirements, a representative plaintiff must also show that the proposed class satisfies Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590. Plaintiff seeks to certify its class pursuant to Rule 23(b)(3). The requirements for Rule 23(b)(3) class certification are that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (citing Fed. R. Civ. P. 23(b)(3)). These elements are commonly referred to as the "predominance" and "superiority" requirements. *Id.* Moreover, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015).

The predominance requirement is "a 'far more demanding' standard than the commonality requirement of Rule 23(a)." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). It "asks whether the common,

aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Ferreras*, 946 F.3d at 185 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016)). "Predominance turns on the 'nature of the evidence' and whether 'proof of the essential elements of the cause of action requires individual treatment.'" *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 319 (3d Cir. 2016) (quoting *Hydrogen Peroxide*, 552 F.3d at 311).

"At the class certification stage, the predominance requirement is met only if the district court is convinced that 'the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Reinig*, 912 F.3d at 127 (internal quotation omitted) (quoting *Gonzalez*, 885 F.3d at 195). To assess this requirement, district courts "must look first to the elements of the plaintiffs' underlying claims and then, 'through the prism' of Rule 23, undertake a 'rigorous assessment of the available evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove' those elements." *Id.* at 128 (quoting *Marcus*, 687 F.3d at 600). Moreover, courts must carefully scrutinize "the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member[.]" *Ferreras*, 946 F.3d at 185 (alteration in original).

Here, as already explained, Plaintiff asserts two claims on behalf of the class against Defendants: (1) violations of the NJWPL, and (2) violations of the NJWHL. The Court considers the elements of the NJWPL and NJWHL claims through the prism of the predominance requirement to determine whether they are capable of proof with common, class-wide evidence.

15

Originally enacted in 1965, the NJWPL "governs the time and mode of payment of wages due to employees," and is a remedial statute to be construed liberally. *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 457 (N.J. 2015). Under the NJWPL, "[n]o employer may withhold or divert any portion of an employee's wages unless . . . [t]he employer is required . . . to do so by New Jersey or United States law . . . or [t]he amounts withheld or diverted" are for contributions, payments, fees, or deductions authorized by the employee and approved by the employer. *Maia v. IEW Constr. Grp.*, 313 A.3d 330, 895 (N.J. 2024) (alterations in original) (quoting N.J. Stat. Ann. § 34:11-4.4). The NJWPL further provides a private cause of action for violations under N.J. Stat. Ann. § 34:11-4.7, which states in pertinent part that "each and every employee with whom any agreement in violation of this section shall be made by any such employer . . . shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction." *Id.*

The NJWHL was enacted in 1966 to "protect employees from unfair wages and excessive hours." *Hargrove*, 106 A.3d at 458 (quoting *In re Raymour & Flanigan Furniture*, 964 A.2d 830, 837 (N.J. App. Div. 2009)). The NJWHL governs the minimum wage "in order to safeguard [the] . . . general well-being" of employees and employers, N.J. Stat. Ann. § 34:11-56a, and for certain employers, imposes an overtime rate for each hour of work in excess of the forty-hour work week, N.J. Stat. Ann. § 34:11-56a4. *Maia*, 313 A.3d. at 896 (alteration in original).

With that background of the relevant claims, the evidence in this case establishes that Plaintiff cannot satisfy his burden to establish commonality and predominance. Although the putative class members are likely ascertainable and identifiable, it is unclear from the record whether the putative class members participated in the activity at the center of this case. The record illustrates that (1) some putative class members went to the office before work while others

did not, and (2) some putative class members worked overtime while others did not. There is no evidence in the record that discusses which putative class members had a car independent of the company vehicle, and which putative class members went to the office prior to or after a job at a worksite, and for how long they were at the office. *See Atis v. Freedom Mortg. Corp.*, Civ. No. 15-3424, 2016 WL 7440465, at *6 (D.N.J. Dec. 27, 2016) (noting that certification can be improper when "[d]etermining the status of class members [] require[s] individual treatment where job position or job duties vary within the class.").

Although the general common questions in this case relate to whether there are violations of the NJWPL and NJWHL, and whether Defendants had a policy that violated these statutes, whether the putative class members will be able to prove the essential elements of the claims depends on individualized evidence related to each specific putative class members' daily job duties and personal responsibilities, not common evidence. The evidence may be similar, but it is too individualized for class certification to be proper. *See Harnish v. Widener Univ. Sch. of L.*, 833 F.3d 298, 305 (3d Cir. 2016) ("If class-wide evidence is lacking, the court cannot be adequately assured that individualized evidence will not later overwhelm the case and render it unsuitable for class-wide adjudication."). And although Plaintiff might meet Rule 23(a)'s commonality requirement, that requirement is subsumed in the predominance requirement of Rule 23(b)(3). *See Georgine*, 83 F.3d at 627.

The Court disagrees with Defendants that *Reinig* is instructive. There, the Third Circuit held that commonality and predominance were not met given that the plaintiff failed to establish the existence of a company-wide policy or the defendant's knowledge of such a policy. *Reinig*, 912 F.3d at 121. Here, the Court is convinced, given the evidence submitted in the record (i.e., the brief depositions, WhatsApp messages, and declarations) that a policy or practice existed

requiring Plaintiff and other workers to come to the office prior to their scheduled worksite. And unlike in *Reinig*, this policy or practice can be imputed on Defendants. *See id.* at 129. However, *Ferreras v. American Airlines, Inc.* is a closer analogue to the facts before the Court. There, employees brought claims for overtime wages as a putative class action and moved for class certification. *Ferreras*, 946 F.3d at 180. The District Court approved class certification but the Third Circuit reversed because "determining when each employee was actually working will necessarily require individualized inquiries." *Id.*

Similarly, here, determining when each employee worked and what activity they were engaged in involves an individualized inquiry only proven by individualized evidence. There is wide variation in which employees went to the office before the workday, how much time the putative plaintiffs worked beyond their scheduled worksite hours, and whether and when the employees went to the shop before arriving at their scheduled worksite. Different evidence will also likely be used to show how much time each putative class member spent loading materials into the company vehicle and travelling to and from jobsites, and whether the putative class members were individually instructed by Defendants to go to the office before going to their scheduled worksite. All of these issues can be answered only by individualized evidence, likely later to overwhelm the litigation. *Id.* ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.")

As part of its "rigorous analysis," *see Marcus*, 687 F.3d at 591, the Court examined the seminal case of *Tyson Foods, Inc. v. Bouaphakeo* and concludes that it is distinguishable from the present matter because in that case, the employers had a system of only paying employees for the time spent at their workstations, not for the time required to put on and take off their protective

gear. 577 U.S. at 447. On its face, this seems similar to the present matter. But in *Tyson*, each employee needed to put on protective gear because it was "integral and indispensable to their hazardous work." *Id.* at 448.[7] In the instant case, it is undisputed by the parties that some employees went to the office and rode in one of the company vehicles, while other employees drove directly to the worksites in their personal vehicles; this was not a mandated policy for all members of the putative class nor was it "integral and indispensable" to their work. As such, there is simply too much uncertainty about Defendants' practice to meet the preponderance of the evidence standard of Rule 23. *Reinig*, 912 F.3d at 125 ("Class certification is proper only if the district court is satisfied, 'after a rigorous analysis,' that the plaintiffs 'established each element of Rule 23 by a preponderance of the evidence.'" (quoting *Marcus*, 687 F.3d at 591)).

Moreover, in *Tyson*, although the Supreme Court granted class certification, rejecting the employer's argument that there was variance in the type of protective gear each employee wore and therefore the claims of the class were not sufficiently similar, *Tyson* dealt predominantly with establishing evidentiary rules for proving predominance and commonality, *id.* at 454–55, and whether the sample at issue could have been used to establish liability in an individual action, *id.* at 458 (holding that representative proof from a sample, based on an expert witness's estimation of average time that employees spent putting on and taking off protective gear, could be used to show predominance of common questions of law or fact). Here, there is no issue about the reliability of Plaintiff's evidence or whether Plaintiff will be able to prove that he should be paid overtime. The problem in this case is that the evidence of the putative class members is too individualized and the record is simply unclear about whether the putative class members were

---

[7] At trial before the District Court, to show that the employees were entitled to overtime pay, the employees' evidence included employee testimony, video recordings of donning and doffing at the plant, and a study performed by an industrial relations expert. *Id.* at 450.

19

required to come to the office before going to the worksite, as some class members did while others admittedly did not.

Plaintiff alleges that a common question is "[w]hether Defendants violated New Jersey's wage and hour laws in their compensation scheme." (Moving Br. at 23.) Again, although there is a common question, Plaintiff fails to meet the predominance factor of Rule 23(b)(3) because this question cannot be answered by common evidence "because a yes or no answer tells us nothing about actual common work habits, if there are any." *Ferreras*, 946 F.3d at 185. The Plaintiff will still be required to go through the process of proving which employees drove to the office before going to a worksite, which employees drove directly to a worksite, how long each employee was at the office, what each employee did at the office, and whether each employee worked overtime and is thus entitled to additional compensation. These questions cannot be answered with common evidence. The Court recognizes that individual differences in total recoverable amounts are not relevant for determining class certification, *see Davis v. Target Corp.*, Civ No. 23-89, 2023 U.S. Dist. LEXIS 214818, *13–14 (E.D. Pa. Dec. 1, 2023) (citing Tyson, 577 U.S. at 460–62), but makes its decision based on the individualized evidence needed to prove the underlying NJWPL and NJWHL claims, not that there may be differences in the recoverable amounts for the putative class members.

Because the Court concludes that Plaintiff fails commonality and predominance under Rule 23(b)(3), the Court need not address superiority or ascertainability.

## V.     <u>CONCLUSION</u>

For the reasons stated above, the Court will **DENY** Plaintiff's Motion.  Nothing in this Opinion impacts the FLSA Collective Action.  An appropriate Order will follow.

Date: **November 18, 2024**

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
